Filed 5/20/26  P. v. Rodriguez CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G064896 |
| v. | (Super. Ct. No. 21CF0020) |
| NERY GONZALEZ RODRIGUEZ, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Larry Yellin, Judge. Affirmed.

Pauline E. Villanueva, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance by Plaintiff and Respondent.

Following a jury trial, defendant Nery Gonzalez Rodriguez was convicted of multiple child sex offenses and sentenced to an indeterminate

life term. A staff attorney at Appellate Defenders, Inc., was appointed to represent Rodriguez on appeal. After reviewing the record herself and consulting with other staff attorneys at Appellate Defenders, Inc., appellate counsel was unable to find any arguable issues to raise on Rodriguez's behalf. Counsel therefore filed a no-issue brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*), asking us to independently review the record. Appellate counsel also advised Rodriguez of his right to file a supplemental brief, which he has done. Having reviewed the record and the supplemental brief, we conclude there is no arguable basis to disturb the judgment. Accordingly, we affirm.

STATEMENT OF FACTS

On December 30, 2020, 15-year-old Jane Doe 1 (JD1) was hospitalized after trying to commit suicide for the third time in her young life. She also revealed to her mother and the police that Rodriguez, her former stepfather, had sexually molested her and her younger sister Jane Doe 2 (JD2) while they were growing up.[1] Following Rodriguez's arrest in early 2021, the police learned he also may have victimized another girl, Jane Doe 3 (JD3).

The trial was held in 2024. JD1 testified Rodriguez repeatedly molested her over a period of years, starting when she was about eight years old. At first, the molestation was limited to Rodriguez touching and pinching JD1's nipples. But, as JD1 grew older, he also began rubbing his penis on her vagina, putting his mouth on her breasts, and making her orally copulate him. The abuse continued until JD1 was about 15 years old. Although she had been receiving mental health treatment for several years before then,

---

[1] At the time of the molestation, JD1 believed Rodriguez was her father, but he was actually her stepfather.

JD1 did not tell her providers, or anyone else, about the abuse at that time because Rodriguez told her their family would fall apart if she did.

JD1 testified Rodriguez also sexually abused JD2 and she once saw him raping JD2 when JD2 was 13 years old. During her testimony, JD2 stated she was not comfortable talking about what Rodriguez had done to her. However, she said Rodriguez touched her "privates" and regularly did sexually inappropriate things to her for several years. She kept the abuse to herself because Rodriguez told her not to tell anyone about it.

The abuse involving JD3 occurred over a decade earlier, when Rodriguez was a young man living at his mother's house. During that time, Rodriguez's mother often babysat JD3 overnight at the house. On one such occasion, when JD3 was seven or eight years old, she awoke in the middle of the night to find Rodriguez touching her breast under her shirt. Rodriguez also reached under her underwear and put his fingers inside her vagina. JD3 pretended she was still asleep, hoping Rodriguez would just go away, but that did not happen. It wasn't until JD3 moved onto her back that Rodriguez got startled and returned to his own sleeping area.

Over the next couple of years, Rodriguez molested JD3 in a similar fashion on five or six occasions while she was sleeping over at his house. JD3 did not tell anyone about the abuse until she learned Rodriguez had been arrested for molesting JD1 and JD2.

At trial, the prosecution presented an expert witness on Child Sexual Abuse Accommodation Syndrome (CSAAS). The expert explained the common characteristics associated with child sexual abuse, including secrecy, helplessness, and delayed disclosure by the victim. But she did not offer any opinions about whether JD1, JD2, or JD3 had been sexually abused.

3

The defense called several character witnesses who vouched for Rodriguez's good moral character. In addition, Rodriguez took the stand in his own defense and denied all the charges against him.

Before the case was submitted to the jury, defense counsel successfully moved to dismiss five of the seven charges involving JD2 for lack of evidence. (Pen. Code, § 1118.1.) On the remaining charges, the jury convicted Rodriguez of continuous sexual abuse against JD1 (*id*., § 288.5, subd. (a)) and committing a lewd act and aggravated sexual assault against both JD2 and JD3 (*id*., §§ 288, subd. (a), 269, subds. (a)(1) & (5)). Because the jury also found Rodriguez victimized more than one child, he was sentenced to prison for 95 years to life pursuant to the One Strike law. (*Id*., § 667.61, subds. (b)/(e) & (j)(2)/(e)(4).)

## DISCUSSION

As we noted at the outset, Rodriguez's appointed attorney filed a *Wende* brief asking us to independently review the record for arguable issues that would inure to Rodriguez's benefit. Counsel also listed some "unbriefed issues" to assist us in our independent review of the record. Having examined those issues and reviewed the entire record, we are convinced there are no arguably meritorious issues to raise on appeal. That includes the issues Rodriguez presented in his supplemental brief, to which we now turn.

Rodriguez contends his trial was unfair because the victims' testimony differed from what they said before trial, as reflected in the discovery he had been provided. Rodriguez does not identify what discovery documents he is referring to, but it is not uncommon for victims to recall events differently at trial than how they reported them at an earlier time. When that happens, the victim's testimony becomes subject to impeachment,

4

and in this case, defense counsel cross-examined JD1 about her prior statements to expose various inconsistencies in her allegations over time.

Defense counsel did not cross-examine JD2. Instead, he made a tactical decision to refrain from doing so because JD2 was unable to provide much detail about Rodriguez's alleged crimes on direct examination. As noted above, that strategy paid off for Rodriguez, in that defense counsel was able to get five of the charges involving JD2 dismissed for lack of evidence.

Defense counsel also filed numerous motions and presented multiple character witnesses on Rodriguez's behalf, which refutes Rodriguez's claim his attorney "only pretended to help" him and did not present any evidence in his favor. In fact, although Rodriguez complains that none of his own children testified for him, his adult son Nery Gonzalez, Jr., was one of the many witnesses who testified for the defense, who also included Rodriguez's sister and brother. As noted above, Rodriguez also testified at trial and was able to tell his side of the story to the jury. There is no merit to Rodriguez's suggestion that his attorney was constitutionally ineffective. (See *Strickland v. Washington* (1984) 466 U.S. 668, 688, 694 [to obtain relief based on ineffective assistance of counsel, a defendant must show his attorney's performance was objectively unreasonable under prevailing professional norms and but for counsel's deficient performance it is reasonably likely he would have obtained a more favorable result at trial].)

In his supplemental brief, Rodriguez also suggests the evidence was insufficient to establish his guilt because the victims' testimony was not corroborated by documentary, video, or DNA evidence. But, as the jury was properly instructed, the testimony of a single witness is sufficient to prove any fact. (CALCRIM No. 301.) It was up to the jury to decide whether the victims' allegations were true.

5

In that regard, it is important to keep in mind JD2's allegations were corroborated by JD1, who testified she saw Rodriguez raping JD2 on one occasion. And all three victims had characteristics that were consistent with the expert's description of CSAAS, which supports their credibility. (See *People v. Lapenias* (2021) 67 Cal.App.5th 162, 171.) Suffice to say, the evidence is sufficient to support the jury's verdict. (See *People v. Jones* (1990) 51 Cal.3d 294, 314 [in reviewing the sufficiency of the evidence to support a conviction, appellate courts do not reweigh the evidence; rather, they must assess the evidence in the light most favorable to the prosecution and presume in support of the judgment every fact the jury could reasonably infer from the evidence].)

Lastly, Rodriguez contends his 95-years-to-life sentence is unfair in light of all the circumstances presented. However, the record shows Rodriguez sexually abused multiple children over a period of many years, including two young girls who believed he was their father. As a serial child sex offender, Rodriguez is subject to stern punishment under California's One Strike law because he is "'among the most dangerous' from a legislative standpoint." (*People v. Wutzke* (2002) 28 Cal.4th 923, 930–931.)

Indeed, it is clear Rodriguez engaged in egregious conduct that has caused his victims severe emotional and psychological distress that is likely to have long-lasting effects. Although Rodriguez received a severe sentence, it is not legally infirm in any respect. (See *People v. Reyes* (2016) 246 Cal.App.4th 62, 89 [upholding sentence of life without parole under the One Strike law]; *People v. Andrade* (2015) 238 Cal.App.4th 1274, 1305–1308 [upholding sentence of 195 years to life under the One Strike law]; *People v. Retanan* (2007) 154 Cal.App.4th 1219, 1222, 1230–1231 [upholding sentence of 135 to life years under the One Strike law]; *People v. Wallace* (1993) 14

Cal.App.4th 651, 666–667 [sentence of more than 283 years for multiple sex offenses constitutional].)

DISPOSITION

The judgment is affirmed.


GOODING, J.

WE CONCUR:


SANCHEZ, ACTING P. J.


SCOTT, J.